**SAXENA WHITE**
10 Bank Street | 8th Floor | White Plains, NY 10606

**Robbins Geller Rudman & Dowd LLP**

July 2, 2021

**VIA ECF**

Hon. Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

      RE:    *City of St. Clair Shores Police and Fire Ret. Sys. v. Credit Suisse Group AG, et al.*
              No. 1:21-cv-03385-NRB

Dear Judge Buchwald:

      We represent proposed lead plaintiffs Peace Officers' Annuity and Benefit Fund of Georgia ("Georgia Peace Officers") and Sheet Metal Workers Pension Plan of Northern California ("Sheet Metal Workers" and, together with Georgia Peace Officers, "Proposed Co-Lead Plaintiffs") in the above-referenced action. We write in response to the Court's June 30, 2021 inquiry regarding the parties' Stipulation and Proposed Order providing for the appointment of Georgia Peace Officers and Sheet Metal Workers as co-lead plaintiffs in this action, and the approval of Saxena White P.A. ("SW") and Robbins Geller Rudman & Dowd ("RGRD") as co-lead counsel. *See* ECF Nos. 30, 31.

      With respect to the Court's first question regarding the features of this case that support the appointment of more than one counsel, as an initial matter, Proposed Co-Lead Plaintiffs respectfully submit that courts in this district have approved co-lead plaintiffs and co-lead counsel in other complex securities class actions against Credit Suisse Group AG ("Credit Suisse"). Specifically, in *City of Birmingham Retirement and Relief System v. Credit Suisse Group AG*, No. 1:17-cv-10014 (S.D.N.Y.), Judge Schofield appointed four institutional investors as Co-Lead Plaintiffs and two firms as Co-Lead Counsel, including SW, in a securities class action based on similar allegations of material misstatements regarding inadequate risk controls. After three years of litigation involving various complex issues, including issues pursuing discovery in foreign jurisdictions, that action was successfully resolved for $15.5 million, and the settlement was approved in December 2020.

      The complex issues that existed in *City of Birmingham* are even more pronounced here. Among other things, this action will require Plaintiffs to prove that Credit Suisse issued materially false and misleading statements concerning material deficiencies in Credit Suisse's risk policies and procedures, including by allowing certain international high-risk clients to take on excessive leverage, thereby exposing Credit Suisse to billions of dollars in losses. Moreover, this action concerns a sprawling international web of alleged deceit involving not just Credit Suisse Group

AG (based in Zurich), but Greensill Capital (based in the United Kingdom and Australia) and Archegos Capital Management (which chiefly financed businesses in Japan, China and Korea), as well as all three companies' auditors and numerous banking partners (including Morgan Stanley, Goldman Sachs, UBS, and Nomura Holdings). *See* Compl. ¶¶2-25. The current roster of agencies and governments investigating the underlying wrongdoing include the U.S. Securities and Exchange Commission, the Swiss Financial Market Supervisory Authority (FINMA), German banking authorities, U.K. authorities, as well as Credit Suisse's own board. Furthermore, RGRD investigated and filed the initial complaint and has already retained a subject matter expert, which preliminary work product would be valuable to the putative class in framing the amended complaint. Accordingly, while each firm is capable and qualified to serve as lead counsel independently, the putative class will greatly benefit by having the two firms collaborating and pooling resources in this complex international case in an efficient and professional manner.

With respect to the Court's second question regarding the measures SW and RGRD will put in place to avoid duplication of work, the Proposed Co-Lead Plaintiffs respectfully submit that the proposed co-lead counsel here have worked extensively and effectively – without duplication – together on numerous securities class actions in the past, including in this district. For example, in *In re Iconix Brand Group, Inc.*, No. 1:15-cv-04860 (S.D.N.Y.), SW and RGRD jointly and successfully prosecuted the action for nearly five years, resulting in a highly favorable $6 million recovery for the class. Indeed, in the final settlement approval hearing for *Iconix*, Judge Gardephe expressly determined that SW and RGRD had done "significant work identifying, investigating, prosecuting, and then settling plaintiffs' claims," and had "fairly and adequately represented the interests of the class." ECF No. at 173 at 18. In addition, SW and RGRD are currently jointly prosecuting *Plymouth County Ret. Sys. v. Patterson Companies, Inc.*, No. 0:18-cv-0871 (D. Minn.), a securities fraud class action in which the firms have effectively worked side-by-side over the last three years to overcome defendants' motion to dismiss, obtain class certification, complete discovery and oppose defendants' efforts to obtain summary judgment. Finally, SW and RGRD also currently serve as co-lead counsel in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation*, No. 2:20-cv-00856 (N.D. Ala.), in which they recently jointly opposed defendants' motion to dismiss.

With respect to this case, SW and RGRD plan to again work cooperatively as co-lead counsel by jointly identifying and allocating litigation tasks equally between the two firms in a non-duplicative manner to ensure maximum efficiency. For example, SW and RGRD, under the supervision of Proposed Co-Lead Plaintiffs, will at all times jointly coordinate assignments such as the drafting of pleadings and responsive submissions, discovery tasks, motion practice, depositions, and hearing coverage in a professional and efficient manner. Through these measures, SW and RGRD are confident that they will avoid unnecessary duplicative work while ensuring the vigorous and efficient representation of the Class's interests. In addition, the following safeguards provide further protection against duplication: (1) the Private Securities Litigation Reform Act of 1995 ("PSLRA") mandates that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class" (15 U.S.C. §78u-4(a)(6)); (2) Rule 23(h) also provides that the "court may award reasonable attorney's fees and nontaxable costs" (id.); (3) the Proposed Co-Lead Plaintiffs – institutional investors with prior experience serving as lead plaintiff in securities cases – will review and approve any fee and expense application before

it is made to this Court; and (4) the attorneys' fees are contingent upon success for the putative class and, by their very nature, it is not in counsels' interests to duplicate fees as such redundancy would reduce the firm's own fees.  Finally, the firms will each review time and expenses on a quarterly basis as well as before any fee and expense application to ensure there are no unreasonable or duplicative entries, and both firms have policies and procedures in place regarding reasonable expense categories and billing requirements.

In response to the Court's final question about which of the Proposed Co-Lead Plaintiffs has suffered the greatest loss, in their opening motions, Georgia Peace Officers claimed a loss of $262,232 (ECF No. 17), and Sheet Metal Workers claimed a loss of $187,839 (ECF No. 22). However, Sheet Metal Workers believes that the two investors' trading patterns are meaningfully different given that the investors purchased their shares at different times throughout the Class Period; Georgia Peace Officers disagrees, believing that any purported distinction does not have any impact on the lead plaintiff selection process.  Rather than engaging in extended litigation concerning these potential issues, Proposed Co-Lead Plaintiffs have agreed to proceed with litigation against Defendants on the merits of their claims with both investors overseeing and directing the litigation at the outset.

Proposed Co-Lead Plaintiffs respectfully submit that, considering that they are the only lead plaintiff movants in this action, and particularly in light of SW and RGRD's successful track record serving together as co-lead counsel, it is in the best interests of the proposed class for them to move forward in jointly prosecuting the proposed class's claims with SW and RGRD as co-lead counsel, while avoiding protracted motion practice on the lead plaintiff issue.  While Proposed Co-Lead Plaintiffs do not believe that briefing on the lead plaintiff issue is necessary under these circumstances, they are happy to provide such briefing if the Court deems it necessary.

Respectfully submitted,

| ROBBINS GELLER RUDMAN & DOWD LLP | SAXENA WHITE P.A. |
|---|---|
| By: s/ David A. Rosenfeld | By: s/ Steven B. Singer |
| 58 South Service Road, Suite 200 | 10 Bank Street, 8th Floor |
| Melville, NY 11747 | White Plains, NY 10606 |
| Telephone: 631/367-7100 | Telephone: 914/437-8551 |
| 631/367-1173 (fax) | 888/631-3611 (fax) |
| drosenfeld@rgrdlaw.com | ssinger@saxenawhite.com |
| Counsel for Sheet Metal Workers Pension Plan of Northern California and Proposed Lead Counsel for the Class | Counsel for the Peace Officers' Annuity and Benefit Fund of Georgia and Proposed Lead Counsel for the Class |

CC: Counsel of Record (via ECF)