SAXENA WHITE
10 Bank Street | 8th Floor | White Plains, NY 10606

Robbins Geller
Rudman & Dowd LLP

July 28, 2021

**VIA ECF**

Hon. Naomi Reice Buchwald
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

      RE:    *City of St. Clair Shores Police and Fire Ret. Sys. v. Credit Suisse Group AG,*
              No. 1:21-cv-03385-NRB

Dear Judge Buchwald:

      We represent Proposed Co-Lead Plaintiffs Peace Officers' Annuity and Benefit Fund of Georgia ("Georgia Peace Officers") and Sheet Metal Workers Pension Plan of Northern California ("Sheet Metal Workers") in the above-referenced Action. We write in response to the Court's July 22, 2021 letter inviting additional briefing with regard to the timing of the Proposed Co-Lead Plaintiffs' purchases of Credit Suisse AG ("Credit Suisse" or the "Company") American Depositary Receipts ("ADRs") during the Class Period. ECF No. 33. We appreciate the opportunity to provide additional briefing to the Court on the issues raised.

      As an initial matter, in response to the Court's inquiry, we hereby confirm that Proposed Co-Lead Plaintiffs have submitted their full trading records during the Class Period to the Court.

      As to the Proposed Co-Lead Plaintiffs' specific trading patterns, the Court is correct that Georgia Peace Officers purchased all, and Sheet Metal Workers purchased approximately half, of their Credit Suisse ADRs "after the disclosure of some of the conduct challenged in the complaint." While the Court inquires "whether one or both of the proposed lead plaintiffs would be subject to challenge during the class certification process" on this basis, Proposed Co-Lead Plaintiffs respectfully submit that although some courts have held that purchases after partial disclosures may give rise to a unique defense under circumstances not present here (*see Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020)), numerous courts reject such challenges at the lead plaintiff stage, particularly before the proposed lead plaintiff has had an opportunity to file an amended complaint with more comprehensive allegations. *See In re Tronox Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) (rejecting argument that post-partial disclosure purchases disqualify a movant from serving as a lead plaintiff).

      Judge Scheindlin's *Tronox* decision is persuasive in this particular case. In *Tronox*, an opposing movant argued that the fact that a proposed lead plaintiff made its initial purchase of

stock following an alleged partial corrective disclosure would subject that movant to unique defenses later in the litigation. Judge Scheindlin rejected this argument, holding:

> The [Company's] partial disclosures that [the competing movant] emphasizes prior to [the presumptive lead plaintiff's] purchases were merely ***partial*** corrective disclosures. They neither make mention of fraud or government investigations; nor do they sufficiently correct [the Company's] prior false and misleading statements or make [the presumptive lead plaintiff], or any other class member, actually aware of the fraud. As even [competing movant's] own Complaint recognizes, it was only once [the Company] filed for bankruptcy in January 2009 that 'the true extent of Tronox's environmental liabilities finally came to light.'

*Id.* at 345-46 (emphasis in original); *see also id.*, n. 57 (citing cases rejecting challenges to movants purchasing stock after partial disclosures).[1]

Courts similarly reject this argument at the class certification stage given that post-partial disclosure purchases "are consistent with a buyer's reliance on the market." *Pelletier v. Endo Int'l plc*, No. 17-cv-5114, 2021 WL 2023608, at *23 (E.D. Pa. May 20, 2021); *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46 (S.D.N.Y. 2012) (Swain, J.) ("[N]umerous courts have held [that] the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market . . . before the information at issue was corrected or changed.") (citing cases).[2]

While the Court correctly notes that there was a challenge to a movant's trading pattern in *In re Hebron Techs. Co., Ltd. Sec. Litig.*, No. 20-cv-4420, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020), that case is readily distinguishable as it did not involve ***any*** alleged partial disclosures; to the contrary, the complaint alleged ***only one*** disclosure on ***one day*** related to a short-seller report. *Id*. at *1. The Court rejected a movant whose only class period purchases occurred ***after*** the single disclosure, which ended the class period. *Id.* at *2.[3]

---

[1] *See also Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (Jones, J.) (rejecting argument that lead plaintiff movant was atypical due to post-partial disclosure purchases); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (same); *Sayce v. Forescout Tech., Inc.*, No. 20-cv-00076, 2020 WL 6802469, at *4-5 (N.D. Cal. Nov. 19, 2020) (same); *In re K-V Pharm. Co. Sec. Litig.*, No. 11-cv-1816, 2012 WL 1570118, at *5-6 (E.D. Mo. May 3, 2012) (same); *Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) (same).

[2] *See also In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 169 (S.D.N.Y. 2010) (rejecting defendants' challenges to post-partial disclosure purchases, finding that "at the times Lead Plaintiffs made their post-disclosure purchases . . . there is no evidence that they were aware of any ongoing, publicly undisclosed fraud or that they purchased the stock with anything other than public information"); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12-cv-03852 (GBD), 2015 WL 10433433, *4 (S.D.N.Y. Sept. 29, 2015) (rejecting argument and holding that because "[p]laintiffs allege[d] that the corrective disclosures were only complete [at the time of the final disclosure], the possible unique defense that [d]efendants contemplate is unlikely to become the focus of litigation.").

[3] The authority cited in *Hebron* is also inapposite. For example, in *Berwecky v. Bear Stearns & Co., Inc.*,

2

Furthermore, the nature of the alleged partial disclosures at issue here reinforces that Proposed Co-Lead Plaintiffs' trading does not present the same issues as in *Hebron*. As set forth in the Complaint (ECF No. 1), Credit Suisse's alleged fraud concerns materially false and misleading statements regarding the Company's systemic "understating [of] its exposure to risk" and "inadequate" internal controls. *Id.* ¶ 22. Several alleged partial disclosures occurred on March 1, 8 and 10, 2021 and, while material to investors, those disclosures did not reveal the full truth of the alleged fraud. Indeed, the Complaint specifically alleges that, "because the full truth was not disclosed, the price of the ADRs remained artificially inflated." ¶¶ 52-53. The Complaint also alleges that, on March 16, 2021, Defendants "issued a press release attempting to ***downplay*** the severity of the Greensill debacle," and both Georgia Peace Officers and Sheet Metal Workers purchased additional ADRs the very next day on March 17 and on March 25 when the ADR price again increased. The Complaint alleges that Defendants' fraud was not revealed until the very end of March 2021, when highly material news related to Credit Suisse's dealings with Archegos Capital Management was disclosed on three consecutive trading days between March 26 and March 30, 2021. ¶¶ 17-19, 56-58. In response, Credit Suisse's ADR price plummeted 20%, from a close of $13.21 on March 25, 2021 to a close of $10.60 on March 31, 2021, on extraordinarily high trading volume.

Given these facts, Proposed Co-Lead Plaintiffs respectfully submit that their respective trading patterns will not subject them to credible challenge during the class certification process, and that the appointment of both funds as lead plaintiff would best protect the putative class by ensuring that institutional investors with purchases throughout the Class Period are overseeing and directing the litigation at the outset. *See generally Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2003) (recognizing that "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim" and "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

---

197 F.R.D. 65, 69 (S.D.N.Y. 2000), the court rejected plaintiffs who, unlike here, purchased during the class period "after allegations of fraudulent behavior [a broker/promoter scheme] became public knowledge" and after a key participant in the scheme had been disbanded. Similarly, in *In re Petrobras Securities Litigation*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015), the court rejected a movant who made all of its purchases ***eight months*** after the underlying bribery and corruption allegations were publicly known. In *Faris v. Longtop Financial Technologies, Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011), both movants purchased following alleged partial disclosures, and the court was troubled by the fact that a member of the rejected movant group was "involved in a lawsuit for its role in a $1.4 billion Ponzi scheme orchestrated by . . . a disbarred Florida attorney." *Id.* In *George v. China Automotive Systems, Inc.*, 2013 WL 3357170 (S.D.N.Y. July 3, 2013), the named plaintiffs were individuals that were atypical in-and-out traders who continued purchasing stock following the close of the class period, when the fraud was fully revealed. *Id.* at *6. In another recent decision, *Lundy*, the presumptive lead plaintiff purchased all of his shares one day before the end of the class period following a partial disclosure that "mention[ed] the alleged fraudulent conduct." 2020 WL 7389027, at *3.

Accordingly, Proposed Co-Lead Plaintiffs respectfully request that the Court approve their request for appointment as Co-Lead Plaintiffs and approval of selection of Co-Lead Counsel.

Respectfully submitted,

| ROBBINS GELLER RUDMAN & DOWD LLP | SAXENA WHITE P.A. |
|---|---|
| By: s/ David A. Rosenfeld | By: s/ Steven B. Singer |
| 58 South Service Road, Suite 200 | 10 Bank Street, 8th Floor |
| Melville, NY 11747 | White Plains, NY 10606 |
| Telephone: 631/367-7100 | Telephone: 914/437-8551 |
| 631/367-1173 (fax) | 888/631-3611 (fax) |
| drosenfeld@rgrdlaw.com | ssinger@saxenawhite.com |
| *Counsel for Sheet Metal Workers Pension Plan of Northern California and Proposed Lead Counsel for the Class* | *Counsel for the Peace Officers' Annuity and Benefit Fund of Georgia and Proposed Lead Counsel for the Class* |

cc: Counsel of Record (via ECF)