UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

CITY OF ST. CLAIR SHORES POLICE AND : Civil Action No. 1:21-cv-03385-NRB
FIRE RETIREMENT SYSTEM, Individually :
and on Behalf of All Others Similarly Situated, : CLASS ACTION
                                              :
                                              :
                      Plaintiff, : MEMORANDUM OF LAW IN SUPPORT
                                              : OF LEAD PLAINTIFF'S MOTION FOR
                                              : FINAL APPROVAL OF SETTLEMENT
         vs.                                  : AND APPROVAL OF PLAN OF
                                              : ALLOCATION AND FOR AN AWARD OF
CREDIT SUISSE GROUP AG, THOMAS : ATTORNEYS' FEES AND EXPENSES AND
GOTTSTEIN, DAVID R. MATHERS, LARA : AN AWARD TO LEAD PLAINTIFF
J. WARNER and BRIAN CHIN,                     : PURSUANT TO 15 U.S.C. §78u-4(a)(4)
                                              :
                      Defendants. :
                                              :
—————————————————————— x

4889-0011-4516.v2

**TABLE OF CONTENTS**

                                                                              **Page**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.........................................................3

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE..............................................................................................................4

      A.    Settlements Are Generally Favored and Encouraged ...............................4

      B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate,
            and Reasonable ........................................................................................5

      C.    The Settlement Satisfies the Requirements of Rule 23(e)(2)....................6

            1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class..........6

            2.    The Settlement Resulted from Extensive Arm's-Length
                  Negotiations ...................................................................................7

            3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks,
                  and Delays of Trial and Appeal ......................................................8

                  a.    The Risks of Establishing Liability at Trial....................................8

                  b.    The Risks of Establishing Damages ...............................................9

                  c.    The Settlement Eliminates the Additional Costs and Delay
                        of Continued Litigation................................................................10

            4.    The Proposed Method for Distributing Relief Is Effective.......................11

            5.    Counsel's Fees Are Reasonable.................................................12

            6.    The Parties Have No Other Agreements Except for a Standard
                  Supplemental Agreement..............................................................12

            7.    Class Members Are Treated Equitably........................................12

      D.    The Settlement Satisfies the Remaining *Grinnell* Factors......................13

            1.    The Reaction of the Class to the Settlement ...............................13

            2.    The Stage of the Proceedings and Discovery Completed.........................13

            3.    The Risks of Maintaining the Class Through Trial ...................................15

4889-0011-4516.v2

**Page**

4.    Defendants' Ability to Withstand a Greater Judgment ............................ 15

5.    The Reasonableness of the Settlement in Light of the Best Possible
Recovery and the Risks of Litigation ......................................................... 15

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD
BE APPROVED ................................................................................................. 16

V.    AWARD OF ATTORNEYS' FEES .................................................................. 18

A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the
$32,500,000 Common Fund Created in the Settlement .......................... 18

B.    The Court Should Award a Reasonable Percentage of the Common Fund,
as Requested .............................................................................................. 18

C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
the-Fund Method ....................................................................................... 20

D.    The *Goldberger* Factors Confirm that the 27.5% Requested Fee Is Fair and
Reasonable ................................................................................................. 22

1.    The Time and Labor Expended by Lead Counsel Support the
Requested Fee ............................................................................. 22

2.    The Magnitude and Complexity of the Litigation Support the
Requested Fee ............................................................................. 23

3.    The Risks of the Litigation Support the Requested Fee ............. 25

4.    The Quality of Representation Supports the Requested Fee ...... 26

5.    Second Circuit Precedent Supports the 27.5% Fee as a Reasonable
Percentage of the Total Recovery .............................................. 27

6.    Public Policy Considerations Support the Requested Fee .......... 27

7.    Lead Plaintiff's Approval and the Class's Reaction Support the
Requested Fee ............................................................................. 28

E.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request ......... 28

VI.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT ............................. 31

- ii -

**Page**

VII.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4) ........................................................................................32

VIII.   THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE .......................................33

IX.     THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ....................................................................34

X.      CONCLUSION...........................................................................................................35

4889-0011-4516.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)........................................................................30

*Azar v. Grubhub*,
No. 1:19-cv-07665, ECF 118 (N.D. Ill. Jan. 12, 2023) ..........................................................21

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)................................................................................................17

*Blum v. Stenson*,
465 U.S. 886 (1984)........................................................................................................19, 20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..............................................................................................................18

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .........................................................................................19, 20

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992).........................................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........................................................................15

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
No. 1:08-cv-03612-RJS, ECF 127 (S.D.N.Y. Apr. 5, 2013) ...................................................21

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .....................................................................14, 15

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
2016 WL 10570211 (D.N.J. Sept. 29, 2016) ..........................................................................22

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
2021 WL 2736135 (S.D.N.Y. June 30, 2021) .........................................................................32

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) .......................................................................30

*Dahl v. Bain Capital Partners, LLC*,
No. 1:07-cv-12388-WGY, ECF 1095......................................................................................22

4889-0011-4516.v2

**Page**

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................................................................19, 29

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................... *passim*

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................8, 9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).....................................................................................................33

*Emerson v. Mutual Fund Series Trust, et al.*,
    No. 2:17-cv-02565-SJF-SIL, ECF 109 (E.D.N.Y. Sept. 9, 2020) ...........................................32

*Emps. Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
    794 F.3d 297 (2d Cir. 2015).............................................................................................26

*Erlandson v. Triterras, Inc., et al.*,
    No. 7:20-cv-10795-CS, ECF 82 (S.D.N.Y. Sept. 8, 2022).......................................................20

*Fleming v. Impax Labs. Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022).........................................................................21

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)....................................................................................... *passim*

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...........................................................................................19

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ...........................................................................................19

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
    2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022).........................................................................21

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) .........................................................................................18

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............................................................10, 11, 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................10, 17

4889-0011-4516.v2

**Page**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987) ...................................................................................15

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................................17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................................................16, 23

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) ............................................................................................30

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ...............................................................................................19

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................................13

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ...............................................................20, 32

*In re Buspirone Antitrust Litig.*,
   2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 17, 2003) ...................................................21

*In re Canadian Superior Sec. Litig.*,
   2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011) ....................................................................14

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) .....................................................................31

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) .........................................................................6

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ..................................................................................30

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................19, 25, 27, 29

*In re Credit Default Swaps Antitrust Litig.*,
   2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) .....................................................................29

4889-0011-4516.v2

**Page**

*In re Doral Fin. Corp. Sec. Litig.*,
   No. 1:05-md-01706-RO, ECF 107 (S.D.N.Y. July 17, 2007) ..................................................30

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................. *passim*

*In re Genworth Fin., Inc. Sec. Litig.*,
   No. 1:14-cv-02392-AKH, ECF 178 (S.D.N.Y. Nov. 16, 2017) .............................................21

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .....................................................................9, 13

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. May 9, 2000) ...............................................................................30

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................11, 13, 15, 23

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................................21

*In re Intercept Pharms., Inc. Sec. Litig.*,
   2016 WL 10519040 (S.D.N.Y. Sept. 8, 2016).......................................................................20

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................25, 27

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ..........................................................................21

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997)..................................................................13, 15, 16, 17

*In re Perrigo Co. PLC Sec. Litig.*,
   2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)..........................................................................20

*In re Prothena Corp. PLC Sec. Litig.*,
   2019 WL 6528672 (S.D.N.Y. Dec. 4, 2019) .........................................................................21

*In re Qudian Inc. Sec. Litig.*,
   2021 WL 2328437 (S.D.N.Y. June 8, 2021) .........................................................................32

4889-0011-4516.v2

**Page**

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)..........................................................................30

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................................23

*In re Superior Beverage/Glass Container Consol. Pretrial*,
  133 F.R.D. 119 (N.D. Ill. 1990)..........................................................................................30

*In re Syngenta AG MIR 162 Corn Litig.*,
  357 F. Supp. 3d 1094 (D. Kan. 2018)..................................................................................21

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................18, 20, 25, 30

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)..................................................................................................19

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989)......................................................................................29

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..........................................................18, 25, 29

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...................................................................8, 13

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986)........................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................20

*Kurzweil v. Philip Morris Cos., Inc.*,
  1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999).....................................................................21

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
  2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ...................................................................21

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
  2015 WL 5626414 (N.D. Ala. Sept. 14, 2015).....................................................................22

4889-0011-4516.v2

**Page**

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................14, 20, 28, 30

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL227355 (E.D. Pa. Jan. 18, 2023)..............................................................21

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016)................................................................22

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)...........................................................................................20, 29

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)...................................................................................16

*Parker v. Time Warner Entm't Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................................25

*Pearlstein v. BlackBerry Ltd.*,
  2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)....................................................5, 32

*Pelzer v. Vassalle*,
  655 Fed. Appx. 352 (6th Cir. 2016).......................................................................12

*Petrovic v. AMOCO Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...............................................................................19

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)...........................................................29

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) .....................................................................................19

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)...................................................................................19

*Schuh v. HCA Holdings, Inc.*,
  2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016)...................................................22

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).........................................................29

*Sines v. Serv. Corp. Int'l*,
  2006 WL 1148725 (S.D.N.Y. May 1, 2006) ..........................................................24

4889-0011-4516.v2

**Page**

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ................................................................29

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................10

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993)..............................................................................19, 20

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...........................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................................................18

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...................................................................................6

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ......................................................................................19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................. *passim*

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)............................................................27

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)........................................................................................................................23
§78t(a) ........................................................................................................................23
§78u-4(a)(4) ...................................................................................................1, 3, 4, 32
§78u-4(a)(6) ...............................................................................................................20

4889-0011-4516.v2

**Page**

Federal Rules of Civil Procedure
    Rule 9(b) ...................................................................................................................26
    Rule 23(a)...........................................................................................................34, 35
    Rule 23(b)(3).......................................................................................................34, 35
    Rule 23(c)..................................................................................................................15
    Rule 23(c)(2).................................................................................................. 5, 33-34
    Rule 23(e)....................................................................................................... 1, 33-34
    Rule 23(e)(2)......................................................................................................5, 6, 16
    Rule 23(e)(2)(A) ........................................................................................................7
    Rule 23(e)(2)(A)-(B).................................................................................................5
    Rule 23(e)(2)(C)........................................................................................................5
    Rule 23(e)(2)(C)(i)................................................................................................8, 11
    Rule 23(e)(2)(C)(ii)..................................................................................................11
    Rule 23(e)(2)(C)(iv).................................................................................................12
    Rule 23(e)(2)(D) ..................................................................................................5, 12
    Rule 23(e)(3).........................................................................................................5, 12

## SECONDARY AUTHORITIES

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
    *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
    (NERA Economic Consulting Jan. 24, 2023).........................................................16

4889-0011-4516.v2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Sheet Metal Workers Pension Plan of Northern California ("Pension Plan" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for approval of: (1) the $32,500,000.00 all-cash Settlement; (2) the proposed Plan of Allocation; (3) Lead Counsel's application for an award of attorneys' fees and expenses; and (4) Lead Plaintiff's application for an award of $1,290.00 pursuant to 15 U.S.C. §78u-4(a)(4).[1]

## I.    INTRODUCTION

In accordance with the terms of the Stipulation, on December 28, 2022, defendants Credit Suisse Group AG ("Credit Suisse"), Thomas Gottstein, David R. Mathers, Lara J. Warner, and Brian Chin (together, "Defendants") completed payment of $32,500,000.00 in cash into an interest-bearing escrow account maintained on behalf of the Class.  This proposed Settlement is a very good recovery for the Class, representing nearly 37% of Lead Plaintiff's estimated recoverable damages.  This Settlement eliminates the risks of continued proceedings, including: the possibility that the claims could be partially or entirely adjudicated against Lead Plaintiff upon a ruling on Defendants' anticipated motion to dismiss or their eventual summary judgment motion; the uncertainties of obtaining additional evidence to prove the claims in a potentially prolonged discovery process that likely would require the pursuit of testimony from witnesses in Switzerland; the difficulties of supporting the claims through deposition evidence largely taken from hostile, former and current Credit Suisse employees; the complexity and expense in obtaining expert opinions to support the claims, particularly for the securities fraud elements of loss causation and damages (and withstanding any challenges to those experts' opinions); and the unpredictable results when bringing

---

[1]    Unless otherwise noted, all capitalized terms used herein are defined in the September 12, 2022 Stipulation of Settlement ("Stipulation").  ECF 67.

4889-0011-4516.v2

a case before a jury.  In the face of these and many other obstacles, Lead Counsel was able to achieve a $32.5 million all-cash Settlement, all without the delays and uncertainties of continued litigation.

Further confirming the fairness, reasonableness, and adequacy of the Settlement is the fact that, to date, Class Members have reacted positively.  Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF 74), over 53,000 copies of the Notice were sent to potential Class Members and nominees, and notice was published once over a national newswire service and has been published in several leading business publications. *See* Murray Decl., ¶¶4-12.[2]  To date, Lead Plaintiff is not aware of a single objection to the Settlement, and only two requests for exclusion from the Class have been received.  *Id.*, ¶16.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members.  The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed among Authorized Claimants.  It was prepared in consultation with Lead Plaintiff's damages consultant, as well as the Claims Administrator, Gilardi & Co. LLC, and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their ADRs during the Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed.  It is fair, reasonable, and adequate, and should be approved.

Lead Counsel also respectfully applies for an award of attorneys' fees in the amount of 27.5% of the Settlement Amount and litigation expenses of $19,656.48, plus interest on both

---

[2]   *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), dated March 24, 2023, submitted herewith.

- 2 -

4889-0011-4516.v2

amounts.   Lead Counsel's fee request, approved by Lead Plaintiff,[3] is within the range of percentages awarded in class actions in this District and across the country.  It is also reasonable when considering the outstanding result achieved here following Lead Counsel's intensive investigation into Credit Suisse's risk management policies and practices conducted while amending the Complaint and the hard-fought, months-long settlement negotiations against experienced defense counsel.  The requested fee is further supported by Lead Counsel's diligence and efficiency in prosecuting and resolving this Litigation, the significant risks undertaken in pursuing complex securities fraud claims against a major international financial institution, which would have required foreign discovery, and Lead Counsel's acceptance of this case on a contingency basis on behalf of the Class.

In addition, Lead Plaintiff applies for an award of $1,290.00, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.  *See* O'Donoghue Decl., ¶9.

Finally, Lead Counsel, which has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

This securities fraud class action was brought by Lead Plaintiff under the Securities Exchange Act of 1934 ("Exchange Act") against Defendants on behalf of a class of purchasers of Credit Suisse ADRs from October 29, 2020 to March 31, 2021, inclusive ("Class Period").  Lead Plaintiff alleges that during the Class Period, Defendants made false and misleading statements

---

[3]    *See* Declaration of Sean O'Donoghue on behalf of Sheet Metal Workers Pension Plan of Northern California in Support of Final Approval of Class Action Settlement ("O'Donoghue Decl."), ¶8, submitted herewith.

4889-0011-4516.v2

regarding Credit Suisse's risk management, including its risk limits, credit exposure, and credit quality monitoring process.  In particular, Lead Plaintiff alleges that while Defendants made a number of allegedly false and misleading statements about the bank's commitment to risk management, the bank nevertheless allowed certain hedge funds and other "prime" customers to make risky, multi-billion-dollar bets on credit violating Credit Suisse's risk limits.  Lead Plaintiff also alleges that Credit Suisse's alleged breach of its core commitment to risk management, including its risk limits, led to at least $5.5 billion in losses from credit exposure losses incurred by one of the bank's largest hedge fund customers.  Upon news of these losses, the price of Credit Suisse ADRs declined over 17% in a matter of days, according to Lead Plaintiff's allegations.

The Court is respectfully referred to the accompanying Davis Declaration[4] for a discussion of: (1) the procedural history of the Litigation; (2) the efforts of Lead Counsel; (3) the negotiations leading to this Settlement; (4) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved; and (5) why the Court should approve Lead Counsel's application for an award of attorneys' fees and expenses.

## III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     Settlements Are Generally Favored and Encouraged

The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart*, 396 F.3d at 116.  The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement."  *Id.*  While the decision to grant or deny approval lies within a court's broad discretion,

---

[4]     Declaration of Jason C. Davis in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Davis Decl.").

4889-0011-4516.v2

a general policy favoring settlement exists, especially for class actions. *Id.* (noting "'strong judicial policy in favor of settlements, particularly in the class action context'"). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *see also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at \*2 (S.D.N.Y. Sept. 29, 2022) (when considering whether to approve a settlement, courts should not decide the final merits or resolve unsettled legal questions, particularly "in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation").

**B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable**

Rule 23(e)(2) sets forth the relevant factors as to whether a settlement "is fair, reasonable, and adequate . . . ." These factors include whether "the class representatives and class counsel have adequately represented the class" and "the [settlement] proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B). They also require a court to determine whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) . . . ." Fed. R. Civ. P. 23(e)(2)(C). Finally, a court will consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

The *Grinnell* factors, some of which overlap with Rule 23(e)(2)'s factors, also guide a court's consideration of whether to approve a class action settlement. They concern:

- 5 -

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is fair, reasonable, and adequate, a court need not find that every factor is satisfied but "should consider the[ir] totality" in light of the circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). Here, Lead Plaintiff respectfully submits that the proposed Settlement fully satisfies Rule 23(e)(2) and all of the *Grinnell* factors and is therefore fair, reasonable, and adequate.

## C.    The Settlement Satisfies the Requirements of Rule 23(e)(2)

As explained in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class, and Approval of Notice to the Class ("Preliminary Approval Brief") (ECF 66), the Settlement meets all of the requirements imposed by Rule 23(e)(2) and the Second Circuit in *Grinnell*. That nothing has changed since preliminary approval "counsel[s] equally in favor of final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019).

### 1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class

The first factor of Rule 23(e)(2) is satisfied because Lead Plaintiff and Lead Counsel adequately represented the Class. The Settlement is the product of a thorough factual investigation and effective litigation and negotiation strategy, bolstered by an extensive analysis of damages and

- 6 -

an understanding of the strengths and weaknesses of the claims. Davis Decl., ¶¶3, 5, 6, 9, 16, 17. Lead Counsel conducted an extensive factual investigation and analysis that involved Lead Counsel analyzing documents filed with the SEC, press releases, news articles, analyst research reports, shareholder communications, relevant case law and authorities, and other publicly-available information concerning Credit Suisse. *Id.*, ¶16(a). Lead Counsel carefully evaluated this information and drafted the detailed, 93-paragraph Amended Complaint for Violations of the Federal Securities Laws ("Complaint"), and engaged in hard-fought settlement negotiations, including confirmatory discovery, resulting in the all-cash, $32,500,000 Settlement (*id.*, ¶¶16(c) and (d)), a favorable resolution which fairly values the claims and provides an immediate benefit to Class Members.

Further, in actively overseeing and participating in this Litigation, Lead Plaintiff conferred with Lead Counsel regarding litigation strategy, reviewed the draft Complaint, reviewed status reports of the Litigation from Lead Counsel, and consulted with Lead Counsel regarding settlement strategy and negotiations. O'Donoghue Decl., ¶6. Lead Plaintiff also retained highly-experienced and well-respected counsel, who not only zealously prosecuted the Litigation from investigation through negotiations, but who were able to secure a very favorable settlement. This diligent and adequate representation of the Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

> **2.      The Settlement Resulted from Extensive Arm's-Length Negotiations**

The Settlement is also the result of extensive, arm's-length negotiations, beginning December 13, 2021 and lasting several months, with no hint of collusion. Davis Decl., ¶¶16(c) and (d). As the Stipulation confirms, Defendants are represented by the experienced and respected law firm Cahill Gordon & Reindel LLP. During this process, Lead Counsel further developed its understanding of the strengths and weaknesses of this case through confirmatory discovery. *Id.*, ¶16.

- 7 -

4889-0011-4516.v2

The arm's-length nature of this process provides compelling evidence that the Settlement is not a product of collusion and gives rise to a strong presumption of fairness. *See Wal-Mart*, 396 F.3d at 116.

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* factors concern the substantive adequacy of the Settlement. Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks, and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of establishing liability and damages.

#### a.    The Risks of Establishing Liability at Trial

In evaluating the Settlement, the Court will balance the benefits to the Class, including the immediacy and certainty of a recovery, against the continued risks of litigation. *See Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007). While Lead Plaintiff strongly believes in the claims, it recognizes that success is not assured, and further believes that this Settlement, when viewed against the risks of proving liability, is fair, adequate, and reasonable. Indeed, despite the strength of this case, Lead Plaintiff faced numerous hurdles to establishing liability, given that it shouldered the burden to prove the existence of a material misstatement or omission, scienter, economic loss, and loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Although Lead Plaintiff believes that its alleged claims are supported by the evidence, it recognizes that Defendants have defenses that they would have vigorously asserted had the Settlement not been achieved. These defenses were asserted in the course of negotiating the Settlement and reflected in the confirmatory discovery that Lead Plaintiff took. Any of these

- 8 -

defenses might have undermined a recovery at trial or at a minimum, prolonged the date of recovery for years.

Moreover, even if these defenses were overcome, Lead Plaintiff would have to establish loss causation, *i.e.*, that Defendants' alleged fraud caused economic loss. *Dura Pharm.*, 544 U.S. at 338 (noting a plaintiff "must prove that the . . . fraud caused an economic loss"). The issue of loss causation would have been hotly contested at summary judgment and trial. Defendants no doubt would have taken the position, supported by expert testimony, that none of the declines in the trading prices of the ADRs was attributable to the alleged revelation of previously-concealed facts about Credit Suisse's systemic credit risk deficiencies, therefore, that Class Members had suffered no cognizable damages. As a result, there was a substantial risk of recovering limited or no damages if the jury sided with the defense.

Thus, by the time the parties agreed on the proposed Settlement, Lead Counsel understood that certain of these defenses might resonate with the Court or jurors. While Lead Plaintiff remained confident in its ability to prove its claims and counter any defense, the risk of losing at the motion to dismiss, summary judgment, trial, or on appeal, when weighed against the immediate and substantial benefits of the $32,500,000 Settlement, supports a finding that the Settlement is fair, reasonable, and adequate.

### b.    The Risks of Establishing Damages

Lead Plaintiff also faced substantial risk in proving damages. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) (discussing difficulty of proving damages in securities cases and the "real risk of no recovery"). To prevail on its §10(b) claims, Lead Plaintiff was required to prove that the alleged misleading statements or fraudulent scheme inflated the price of Credit Suisse's ADRs. Lead Counsel, with the assistance of its economics and damages

- 9 -

expert, calculated the inflation attributable to the alleged wrongdoing – assuming every element of the Class' damages theory was accepted as correct and recoverable.  If this case were to proceed, the defense would no doubt contest each and every aspect of those assumptions and calculations.

Proof of damages is a complex matter requiring expert testimony.  At trial, Defendants would have challenged Lead Plaintiff's expert's methodology for calculating damages with their own.  Accordingly, Lead Plaintiff would have faced a "battle of the experts" – a battle in which no party is ever assured to prevail.[5]  Because calculating damages in securities fraud cases involves competing economic and statistical models put forward by the parties, the outcome at later stages of the litigation or at trial is hardly certain.  A jury could award nothing or far less in damages than Lead Plaintiff recovered in the Settlement – a risk that also favors final approval.

### c.    The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Litigation would be considerable.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014) ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further

---

[5]    *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

4889-0011-4516.v2

litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

If not for this Settlement, the Litigation would have continued to be vigorously contested. The parties would complete both fact and expert discovery and brief motions for summary judgment as well as prepare for a likely multi-week trial. Even if the Class could recover a larger judgment after a trial, the additional delay posed by the trial itself, as well as post-trial motions and appeals, could deny the Class any recovery for years. *See Hicks*, 2005 WL 2757792, at *6. More importantly, there is no guarantee that the outcome would favor the Class. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (Buchwald, J.) (noting securities class action litigation is "'notably difficult and notoriously uncertain'"). The Settlement avoids all of these risks.

Accordingly, the Rule 23(e)(2)(C)(i) factor and the first, fourth and fifth *Grinnell* factors weigh in favor of final approval of the Settlement.

### 4.    The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken customary steps to ensure that the Class is notified about the Settlement. More than 53,000 copies of the Notice and Proof of Claim were mailed and the Summary Notice was published. Murray Decl., ¶¶4-12. The claims process is similar to that commonly used in securities class action settlements, and provides for straightforward cash payments based on trading information provided. Although Class Members have until April 20, 2023 to object to the Settlement or request exclusion from the Class, no Class Members have thus far objected, and only two requests for exclusion from the Class have been received. *Id.*, ¶16.

**5.** **Counsel's Fees Are Reasonable**

Consistent with the Notice, and as discussed further below, Lead Counsel seeks an award of attorneys' fees in the amount of 27.5% of the Settlement Amount and expenses and charges in an amount of $19,656.48, plus interest on both amounts. Counsel's fee request is reasonable in light of the efforts of Lead Counsel, fee awards in similar securities class actions in this District, the contingent nature of its representation, and the risks of the Litigation. Moreover, since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible, so there is no risk that counsel will be paid but Class Members will not.[6]

**6.** **The Parties Have No Other Agreements Except for a Standard Supplemental Agreement**

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement covered by Rule 23(e)(3), which requires "a statement identifying any agreement made in connection with the proposal." As Lead Plaintiff disclosed when seeking preliminary approval, the parties have a standard supplemental agreement which allows Credit Suisse to terminate the Stipulation if Class Members with a certain aggregate amount of Recognized Claims opt out of the Settlement.[7]

**7.** **Class Members Are Treated Equitably**

Finally, Rule 23(e)(2)(D) concerns whether class members are treated equitably. The Settlement is designed to do precisely that. The Plan of Allocation treats Class Members equitably

---

[6] The Stipulation (¶7.2) provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an order awarding such fees and expenses. *See Pelzer v. Vassalle*, 655 Fed. Appx. 352, 365 (6th Cir. 2016) (approving a similar provision finding that it "does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

[7] Upon request, Lead Plaintiff will provide a copy of the supplemental agreement to the Court for *in camera* review.

4889-0011-4516.v2

relative to each other, based on the timing of their securities purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses. In this way, all Class Members are situated and treated similarly.

### D.    The Settlement Satisfies the Remaining *Grinnell* Factors

#### 1.    The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and the lack of objections "'evidenc[es] the fairness of a settlement.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Veeco*, 2007 WL 4115809, at *7 (considering the reaction of the class to the settlement as "perhaps 'the most significant factor to be weighed in considering its adequacy'"). Over 53,000 copies of the Notice, which describes the nature of the Litigation and the terms of the Settlement, were distributed to potential Class Members and nominees. Murray Decl., ¶11. To date, no objections to the Settlement have been received, and only two requests for exclusion from the Class have been received. The Court-ordered deadline for objections or opting out is April 20, 2023. Any objections received by that date will be addressed in Lead Plaintiff's reply brief, due on April 27, 2023.

#### 2.    The Stage of the Proceedings and Discovery Completed

A court will also consider "'whether the [plaintiffs] had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting *IMAX*, 283 F.R.D. at 190). "To satisfy this factor, [the] parties need not have even engaged in formal or extensive discovery." *Hi-Crush*, 2014 WL 7323417, at *7 (noting discovery cannot begin in cases

- 13 -

brought under the PSLRA until the motion to dismiss is denied) (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002)).

In this case, Lead Plaintiff had sufficient information to make an informed decision on the propriety of the Settlement.  As detailed in the Davis Declaration, to draft the Complaint, Lead Plaintiff and Lead Counsel conducted a comprehensive factual investigation and analysis into the events and circumstances alleged in the Complaint, including the review of Credit Suisse's SEC filings, news reports, analyst reports, press releases, shareholder communications, and other publicly available information regarding Credit Suisse and its risk management policies and procedures, as well as consideration of the relevant case law and authorities.  Davis Decl., ¶16.  Lead Counsel then participated in (and Lead Plaintiff received updates regarding) exhaustive settlement negotiations that lasted several months before they were successful.  *Id.*  In the course of those negotiations, Lead Counsel successfully secured confirmatory document discovery from Defendants to evaluate further the risks associated with the Litigation.  *Id.*

Accordingly, Lead Plaintiff and Lead Counsel "developed a comprehensive understanding of the key legal and factual issues in the [L]itigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014) (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)); *In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) ("although there has been no formal discovery, plaintiffs' counsel have done an adequate factual investigation to be thoroughly apprised of the merits of their case").

- 14 -

4889-0011-4516.v2

### 3. The Risks of Maintaining the Class Through Trial

Although Lead Plaintiff was confident it could have obtained class certification here, it was not guaranteed, and the Court could have reevaluated it at any time. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). The Settlement eliminates any uncertainty regarding this issue.

### 4. Defendants' Ability to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in a settlement may be relevant to a settlement's fairness. *Grinnell*, 495 F.2d at 463. However, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *PaineWebber*, 171 F.R.D. at 129; *City of Providence*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"); *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is not required to "empty its coffers" before a settlement can be found adequate.'"). Here, although Credit Suisse undoubtedly could endure a large judgment, all other factors favor final approval.

### 5. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Risks of Litigation

The last two *Grinnell* factors are also satisfied. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent*

- 15 -

*Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).   The Settlement need only fall within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement.").   In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years later.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Here, the Settlement represents an outstanding recovery of approximately 37% of the estimated recoverable damages, which is many multiples above the 1.8% median percentage recovery for losses in securities class actions in 2022.[8]   Moreover, the Settlement eliminates the numerous risks involved in litigation – especially those inherent in securities class action cases.  In light of the legal and factual issues typically present in these cases, the unpredictable outcome of a lengthy and complex trial, and the appellate process that would most likely follow, the fairness of this substantial settlement is readily apparent.

In sum, both the Rule 23(e)(2) factors and the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

## IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

If the Court approves the proposed Settlement, upon completion of the claims administration process, the Net Settlement Fund will be distributed to Authorized Claimants according to the Plan

---

[8]   *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, fig. 19, NERA Economic Consulting (Jan. 24, 2023).

4889-0011-4516.v2

of Allocation set forth in the Notice.  Murray Decl., Ex. A (Notice) at 8-10.  "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133.  The opinion of experienced and informed counsel carries considerable weight.  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).  Thus, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *See Advanced Battery*, 298 F.R.D. at 180; *Am. Bank Note*, 127 F. Supp. at 429-30.  Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among . . . class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Here, the Plan of Allocation was formulated by Lead Counsel with the consultation of its in-house damages consultant, who calculated individual Class Member's claims consistent with the methodology that Lead Plaintiff would have used at trial.  The plan reflects the statutory scheme and damages theory for the alleged claims, and is similar to plans of allocation used in other settlements resolving Exchange Act claims.  Davis Decl., ¶19.  Specifically, it is based on the out-of-pocket measure of damages and is designed to measure the difference in what Class Members paid for their ADRs during the Class Period and what they would have paid had the allegedly omitted information been disclosed or alleged misstatements not been made.  Under the Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, with that share determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.  Accordingly, the Plan of Allocation is fair, reasonable, and adequate to the Class as a whole, treats Class Members equitably, warranting approval.

- 17 -

## V.    AWARD OF ATTORNEYS' FEES

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the $32,500,000 Common Fund Created in the Settlement

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of attorneys' fees from a common fund "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes,"[9] and discourage misconduct of a similar nature. Indeed, the Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks*, 2005 WL 2757792, at *9.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund, as Requested

Most courts find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart*, 396 F.3d at 121; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's work is measured

---

[9]    *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *accord In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

- 18 -

best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[10]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting "a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50 (holding that the percentage-of-the-fund or lodestar method may be used); *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used"). The Second Circuit also has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *accord Davis*, 827 F. Supp. 2d at 183-85; *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010). All Courts of Appeal to consider the matter have approved of the percentage method, with two circuits ***requiring*** its use in common-fund cases.[11]

---

[10]   *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[11]   *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District

The PSLRA also supports use of the percentage-of-the-fund method, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6). Several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions.  *See, e.g.*, *Telik*, 576 F. Supp. 2d at 586; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley*, 186 F. Supp. 2d at 370.

### C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery.  *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested 27.5% fee is consistent with the Court's fee awards in similar securities class actions, *e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% on $50 million recovery) and *In re Intercept Pharms., Inc. Sec. Litig.*, 2016 WL 10519040, at *1 (S.D.N.Y. Sept. 8, 2016) (awarding 28.63% on $55 million recovery), and is well within the range of percentage fees awarded by other courts within the Second Circuit in comparable securities and antitrust cases.  *See, e.g.*, *Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (¶4) (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million settlement); *In re*

---

of Columbia Circuits have required the use of the percentage method in common fund cases.  *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

4889-0011-4516.v2

*Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at \*1 (S.D.N.Y. Feb. 18, 2022) (awarding 33-1/3% of a \$31.9 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 2022 WL 4136175, at \*1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of \$18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*16-\*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee "constitutes a proportion routinely approved as reasonable"); *In re Prothena Corp. PLC Sec. Litig.*, 2019 WL 6528672, at \*1 (S.D.N.Y. Dec. 4, 2019) (approving 30% of a \$15.7 million settlement); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, ECF 178 at 2 (¶3) (S.D.N.Y. Nov. 16, 2017) (awarding 30% of \$20 million recovery); *see also, e.g.*, *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, 2013 WL 11330936, at \*3 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of \$85 million recovery); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS, ECF 127 at 1 (¶3) (S.D.N.Y. Apr. 5, 2013) (awarding 30% of \$29 million recovery); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of \$586 million recovery); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538, at \*11 (S.D.N.Y. Apr. 17, 2003) (awarding 33.33% of \$220 million recovery); *Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105, at \*1 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of \$123.8 million recovery).

A review of fee awards in securities cases and other complex class actions from other jurisdictions further confirms the reasonableness of the requested award. *See, e.g.*, *McDermid v. Inovio Pharms., Inc.*, 2023 WL227355, at \*11-\*13 (E.D. Pa. Jan. 18, 2023) (approving 27.5% of \$44 million recovery); *Azar v. Grubhub*, No. 1:19-cv-07665, ECF 118, at 1 (N.D. Ill. Jan. 12, 2023) (awarding 30% of \$42 million recovery); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at \*7-\*10 (N.D. Cal. July 15, 2022) (approving 30% of \$33 million recovery); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1111-16 (D. Kan. 2018) (awarding one-third of \$1.51 billion

4889-0011-4516.v2

recovery); *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388-WGY, ECF 1095 Electronic Order granting ECF 1051 Motion for Attorney Fees (D. Mass. Feb. 2, 2015) (awarding 33% of $590.5 million recovery); *see also, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2016 WL 10570211, at *1 (D.N.J. Sept. 29, 2016) (awarding 30% of $33 million recovery); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million recovery); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8- *9 (D.R.I. Feb. 17, 2016) (awarding 30% of $48 million recovery); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million recovery).

### D.     The *Goldberger* Factors Confirm that the 27.5% Requested Fee Is Fair and Reasonable

The Second Circuit has repeatedly held that the appropriate criteria to consider when reviewing a request for attorneys' fees in a common-fund case include the *Goldberger* factors:

> "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50.  These factors, addressed below, support approval of the requested fee.

### 1.     The Time and Labor Expended by Lead Counsel Support the Requested Fee

In the almost two years since this case was filed, Lead Counsel dedicated a substantial amount of time and resources to prosecuting these claims.  Its efforts included an extensive and thorough investigation necessary to prepare the initial and amended complaints.  Davis Decl., ¶¶5, 16.  Lead Counsel also successfully prepared the motion to appoint the Pension Plan as Lead Plaintiff and Robbins Geller as Lead Counsel in June 2021.  *Id.*, ¶5.  Finally, Robbins Geller

- 22 -

conducted exhaustive settlement negotiations, which included securing and reviewing confirmatory discovery of Defendants' internal files. *Id*.

To obtain a successful Settlement, Lead Counsel devoted a significant amount of time and resources to this Litigation. Specifically, Lead Counsel spent 2,123.20 hours prosecuting this case. *See* accompanying Declaration of Jason C. Davis Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Decl."). This time and effort confirm that the fee requested here is reasonable.

### 2. The Magnitude and Complexity of the Litigation Support the Requested Fee

As mentioned above, this and other courts have long recognized that securities class actions are "'notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see IMAX*, 283 F.R.D. at 189 (same). This Litigation was no exception. It raised complex and novel legal issues under §§10(b) and 20(a) of the Exchange Act, as well as unique factual issues surrounding Credit Suisse's risk management, credit exposure, and credit quality monitoring process, which issues magnified the difficulty of proving liability. Further, obtaining documentary and testimonial evidence sufficient to prove the merits would have entailed, among other endeavors, time-consuming efforts to obtain records from a well-represented financial institution, establishing Lead Plaintiff's case through the deposition testimony of Credit Suisse employees and former employees, who are likely to be hostile witnesses, and navigating international rules and procedures to gain testimony from percipient witnesses in foreign jurisdictions like Switzerland. Further, the elements of loss causation and damages would have involved a complicated and costly "battle of the experts." *See AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable

- 23 -

challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").  Thus, the Litigation's magnitude (damages of up to $88.9 million) and complexity support the conclusion that the requested fee is fair and reasonable.

Moreover, the relatively early timing of the Settlement does not lessen the complexity and difficulty inherent in the Litigation.  Although settlement negotiations began after Lead Plaintiff filed the Complaint and before the Litigation had faced any challenges from Defendants, Lead Counsel knew from experience to expect Defendants to raise formidable defenses during their numerous opportunities to diminish or dismiss the Litigation altogether, including a motion to dismiss, summary judgment, motions to exclude Lead Plaintiff's experts, and trial.  Careful consideration was given to these defenses during the parties' protracted settlement negotiations.  Notwithstanding the difficulty it would take to prevail against these defenses had the Litigation continued to trial, Lead Counsel was able to secure an outstanding settlement for the Class.

Nor does the early successful conclusion to a class action provide any reason against awarding a reasonable fee.  As one court in this district found:

> Of course, complexity and magnitude are relative terms.  The lawyer who succeeds in having the enemy wave the white flag of surrender without firing his or her weapon should be handsomely rewarded.  Indeed, one may posit that, in a common fund case utilizing the percentage method, the multiplier would likely be larger in a case where fewer hours were needed to bring the opposing side to a satisfactory settlement.

*Sines v. Serv. Corp. Int'l*, 2006 WL 1148725, at *3 (S.D.N.Y. May 1, 2006).  Likewise, here, obtaining an extremely favorable Settlement relatively early in the proceedings supports awarding the requested fee.

4889-0011-4516.v2

### 3.    The Risks of the Litigation Support the Requested Fee

The risks undertaken in the Litigation is often considered the most important *Goldberger* factor. *See, e.g.*, *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Grinnell*, 495 F.2d at 470. When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 54-55; *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (the court should consider "'the contingent nature of the expected compensation'" and the "'risk of non-payment viewed as of the time of the filing of the suit'").

Lead Counsel undertook this case on a wholly contingent basis, knowing that the Litigation could last for years and would require them to devote substantial attorney time and significant expenses with no guarantee of compensation. Davis Decl., ¶11. Although the case was brought to a successful conclusion, this was far from guaranteed at the outset. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, at *6. Lead Counsel's assumption of this contingency-fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D.

128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

Here, substantial risk existed that the case would be fully or partially adjudicated against Lead Plaintiff following a motion to dismiss or a subsequent motion for summary judgment. Indeed, the heightened pleading standards for securities fraud provided under Rule 9(b) and the PSLRA meant that Lead Plaintiff would face immediate and significant challenges regarding whether the alleged false and misleading statements were pled with sufficient particularity, and whether the Complaint stated with particularity facts giving rise to a strong inference of Defendants' scienter. *See Emps. Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015).

Lead Counsel firmly believes that Lead Plaintiff's claims were meritorious. However, Defendants were represented by highly capable attorneys and the risk of a decision in favor of Defendants, whether by the Court or by a jury at trial, was significant. Lead Counsel's willingness to assume that risk with a significant commitment of time and money demonstrates that this *Goldberger* factor weighs heavily in favor of the requested fee.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation is another important factor that supports the reasonableness of the requested fee. The quality of the representation here is best evidenced by the quality of the result achieved. *See Goldberger*, 209 F.3d at 55. As a result of its skill and substantial experience in the specialized field of shareholder securities litigation (*see* Lead Counsel's firm resume, attached to the Robbins Geller Decl. as Ex. D), Lead Counsel developed a strong factual record over the course of almost two years of litigation. That record was critical to preparing the Complaint and negotiating the Settlement. The quality of Lead Counsel's efforts in the Litigation, its ability to marshal the necessary resources, and its commitment to the Litigation, enabled Lead Counsel to recover

4889-0011-4516.v2

$32,500,000 for Credit Suisse's ADR investors, a recovery of approximately 37% of the estimated recoverable class-wide damages.

Finally, courts repeatedly recognize that the quality of opposing counsel should be taken into account in assessing the quality of plaintiffs' counsel's performance. *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Here, Defendants are represented by Cahill Gordon & Reindel LLP, a highly respected law firm, and the defense attorneys brought to bear substantial experience in securities litigation and tenacity in representing their clients. Despite this formidable opposition, Lead Counsel presented a strong case and demonstrated a commitment to vigorously prosecuting this Litigation, which enabled Lead Counsel to achieve the Settlement.

### 5.   Second Circuit Precedent Supports the 27.5% Fee as a Reasonable Percentage of the Total Recovery

In considering the requested fee in relation to the settlement, a court will consider the fee as a percentage of the total recovery and compare it "'to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed above (§V.C.), the requested fee award is well within the range of fees that this and other courts in the Second Circuit and around the country have awarded in comparable securities and other complex cases. Accordingly, the fee award requested is reasonable in relation to Second Circuit precedent.

### 6.   Public Policy Considerations Support the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead

4889-0011-4516.v2

Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting the fee and expense application here.

### 7.    Lead Plaintiff's Approval and the Class's Reaction Support the Requested Fee

Lead Plaintiff Sheet Metal Workers Pension Plan of Northern California was actively involved in the prosecution and settlement of this Litigation and has considered and approved the requested fee and expense award. *See* O'Donoghue Decl., ¶¶8, 10. The reaction of the Class also supports the requested fee. As of March 24, 2023, the Claims Administrator has sent over 53,000 copies of the Notice to potential Class Members and their nominees (Murray Decl., ¶11), informing them that, among other things, Lead Counsel intended to apply for an award of attorneys' fees in an amount not to exceed 27.5% of the Settlement Amount and expenses in an amount not to exceed $50,000 (plus interest thereon for both). *Id.*, Ex. A (Notice at 3). While the time to object does not expire until April 20, 2023, to date, not a single objection has been received.

### E.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at \*26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'");

- 28 -

*Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six," *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012), and even higher, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012).

Here, if the Court decides to consider it, a lodestar cross-check would support the requested fee. Lead Counsel devoted 2,123.20 hours of attorney and staff time in prosecuting this Litigation, and its lodestar – derived by multiplying the hours each person worked by their current hourly rates – is $1,605,128.00.[12] *See* Robbins Geller Decl., ¶4. The requested fee of 27.5% of the Settlement Amount represents a multiplier of 5.6 of lodestar.

The multiplier here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified given the effort required, the risks faced and overcome, and the results achieved. *See, e.g.*, *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving 6.16 multiplier); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving a lodestar multiple of "just over 6"); *Davis*, 827 F. Supp. 2d at 185 (multiplier of 5.3 was "not atypical" in similar

---

[12]   The Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate lodestar as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Jenkins*, 491 U.S. at 284.

- 29 -

4889-0011-4516.v2

cases); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (lodestar multiplier of 5 found "not unreasonable"); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at \*9 (S.D.N.Y. Sept. 4, 2013) (awarding fee that amounts to 5.65 multiplier, noting that counsel "should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at \*2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, ECF 107 at 5 (¶9(f)) (S.D.N.Y. July 17, 2007) (awarding "a reasonable multiplier of 10.26"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier appropriate in light of contingency risk and quality of result); *Maley*, 186 F. Supp. 2d at 369 (4.65 multiplier was "well within the range awarded by courts in this Circuit" and elsewhere); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at \*8 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of six).

The multiplier is amply supported by the outstanding nature of the recovery, among other factors. This contingent action was litigated for nearly two years and the recovery is roughly 37% of estimated recoverable class-wide damages. As the court noted in *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990): "There should be no arbitrary ceiling on multipliers." This is especially true when a lodestar/multiplier analysis is used merely as a cross-check on reasonableness. To find otherwise, undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 196 (E.D. Pa. May 9, 2000) ("The court will not reduce the

- 30 -

requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").

Thus, the multiplier and 27.5% fee are within the acceptable range awarded in cases of this type.

## VI.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Lead Counsel's application includes a request for charges and expenses reasonably incurred in pursuing the claims on behalf of the Class.  Lead Counsel's expenses and certain in-house charges are properly recoverable.  *See, e.g., In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

As detailed in counsel's fee and expense declaration, Lead Counsel requests $19,656.48 in expenses for prosecuting this Litigation for the benefit of the Class.  Robbins Geller Decl., ¶5. These expenses are of a type necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses and other charges include consultant fees, filing fees, online factual and legal research, among others.

The Notice informed Class Members that Lead Counsel would apply for expenses in an amount not to exceed $50,000 to be paid from the Settlement Fund.  Murray Decl., Ex. A (Notice at 3).  The expenses requested, $19,656.48, are well below that amount.  To date, no Class Member has objected to Lead Counsel's request for expenses.

4889-0011-4516.v2

## VII.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff also seeks approval for a modest award of $1,290.00 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  This and many other courts have approved such awards under the PSLRA to compensate class representatives for expenses incurred, as well as the time and effort they spent, on behalf of the class.  *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *11 (awarding the two lead plaintiffs $100,000 each); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff); *Emerson v. Mutual Fund Series Trust, et al.*, No. 2:17-cv-02565-SJF-SIL, ECF 109 at 4 (¶8) (E.D.N.Y. Sept. 9, 2020) (approving awards to lead plaintiffs of amounts between $1,500 and $5,800 "related to their representation of the class"); *BHP*, 2019 WL 1577313, at *2 (approving awards of $3,148.20 and $3,257.80 to lead plaintiffs).

As set forth in the O'Donoghue Declaration (filed herewith), Lead Plaintiff "requests reimbursement for its Fund Counsel's fees incurred in connection with the Litigation in the amount of $1,290."  O'Donoghue Decl., ¶9.

The Notice informed potential Class Members that Lead Plaintiff may seek approval for an award of up to $5,000 based on its representation of the Class.  Murray Decl., Ex. A (Notice at 3). The requested award of $1,290 is well below that amount.  To date, no Class Member has objected to this requested award.  Accordingly, Lead Plaintiff's request is reasonable and fully justified under the PSLRA and should be granted.

- 32 -

4889-0011-4516.v2

## VIII. THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).[13] The standard for measuring the adequacy of a class action settlement notice is reasonableness. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* "Notice is 'adequate if it may be understood by the average class member.'" *Id.*

Here, in accordance with the Preliminary Approval Order, by January 6, 2023, the Claims Administrator caused the Notice and Proof of Claim to be mailed to potential Class Members and nominees. *See* Murray Decl., ¶¶5-8. As of March 24, 2023, over 53,000 copies of the Notice have been mailed to potential Class Members and nominees. *Id.*, ¶11. The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement or the fees and expenses that Lead Counsel intends to request, or to exclude themselves from the Class. In addition, the Summary Notice was published once over a national newswire service and has been published in several leading financial publications.[14] Murray Decl., ¶12. Information regarding the Settlement, including downloadable

---

[13]  Citations are omitted and emphasis is added throughout, unless otherwise indicated.

[14]  These include: *The Wall Street Journal* (WSJ.com), *The Financial Times*, *Investor's Business Daily*, and Fortune.com. While we had hoped to publish Summary Notice in *Bloomberg Businessweek*, they were unable to accommodate us, and we selected an alternative business publication, Fortune.com, which has a similar audience and reach.

4889-0011-4516.v2

copies of the Notice and Proof of Claim, was also posted on a website devoted solely to the administration of the Settlement: www.CreditSuisseSecuritiesSettlement.com. *Id.*, ¶14.

The notice program, which combined an individual, mailed Notice and Proof of Claim to all potential Class Members and nominees who could be identified with reasonable effort, and a Summary Notice published in four preeminent business publications, contained all of the information required by §21D(a)(7) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and is adequate to meet the due process and Rules 23(c)(2) and 23(e) requirements for providing notice to the Class.

## IX. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In presenting the Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court certify the Class for settlement purposes only. In its Preliminary Approval Order, the Court addressed the requirements for class certification set forth in Rules 23(a) and 23(b)(3) and found that Lead Plaintiff had met the requirements for purposes of settlement. By its Preliminary Approval Order, the Court preliminarily certified the following Class:

> All persons who purchased or otherwise acquired Credit Suisse ADRs between October 29, 2020 and March 31, 2021, inclusive. Excluded from the Class are Defendants and members of their immediate families, the officers and directors of the Company at all relevant times and members of their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are any persons and entities who are found by the Court to have timely and validly requested exclusion.

*See* ECF 74, ¶¶1-3. In addition, the Court preliminarily certified Lead Plaintiff as class representative and Lead Counsel as class counsel. *Id.*, ¶3.

Since entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Class and, for all the reasons stated in Lead Plaintiff's

- 34 -

motion for preliminary approval, incorporated herein by reference, Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel.

## X.   CONCLUSION

Based on the foregoing and the entire record, Lead Plaintiff and Lead Counsel respectfully request that the Court approve: the Settlement and the Plan of Allocation; Lead Counsel's request for an award of attorneys' fees of 27.5% of the Settlement Amount and payment of $19,656.48 in expenses; and an award of $1,290.00 sought by Lead Plaintiff as allowed by the PSLRA.

DATED:  March 31, 2023                          Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                JASON C. DAVIS


                                                        s/ Jason C. Davis
                                                _____
                                                      JASON C. DAVIS

                                                Post Montgomery Center
                                                One Montgomery Street, Suite 1800
                                                San Francisco, CA  94104
                                                Telephone:  415/288-4545
                                                415/288-4534 (fax)
                                                jdavis@rgrdlaw.com

- 35 -

4889-0011-4516.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 36 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 31, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Jason C. Davis
JASON C. DAVIS

ROBBINS GELLER RUDMAN
& DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
Email:  jdavis@rgrdlaw.com

# Mailing Information for a Case 1:21-cv-03385-NRB City of St. Clair Shores Police and Fire Retirement System v. Credit Suisse Group AG et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Erin Whitney Boardman**
  eboardman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Richard William Gonnello**
  rgonnello@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,scaesar@rgrdlaw.com

- **David George Januszewski**
  djanuszewski@cahill.com,MA@cahill.com

- **Joel Laurence Kurtzberg**
  JKurtzberg@cahill.com,MA@cahill.com

- **Adam Shawn Mintz**
  amintz@cahill.com,MA@cahill.com

- **Edward Nathaniel Moss**
  EMoss@cahill.com,edward-moss-3905@ecf.pacerpro.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sheila Chithran Ramesh**
  sramesh@cahill.com,MA@cahill.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,malbert@ecf.courtdrive.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven B. Singer**
  ssinger@saxenawhite.com,e-file@saxenawhite.com

- **Herbert Scott Washer**
  hwasher@cahill.com,MA@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)